IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

RAUL MANCHA MONTOYA,

     Petitioner,

v.

UNITED STATES OF AMERICA,

     Respondent.

Civil Case 2:24-CV-63-Z
(Criminal Case 2:22-CR-46-Z-BR-7)

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Petitioner Raul Mancha Montoya ("Montoya") filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. Section 2255 by a person in federal custody ("Motion") (ECF No. 2). Having considered the Motion, the response, the record, and applicable authorities, the Court hereby **DENIES** the Motion for the reasons stated below.

**BACKGROUND**

The record in Montoya's underlying criminal case, No. 2:22-CR-46-Z-BR ("CR"), reflects the following:

On April 28, 2022, Montoya was named in sealed indictment charging him with (1) conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. Section 846, and (2) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(c). *See* CR ECF No. 1. On November 4, 2022, Montoya entered into a plea agreement whereby he agreed to plead guilty to one count of possession with intent to distribute methamphetamine. CR ECF No. 294. The plea agreement, signed by Montoya, acknowledged that the sentence would be solely in the discretion of the Court.

*Id.* at 3. The agreement further acknowledged that no guarantees or promises had been made to him as to what the sentence ultimately would be. *Id.* Montoya and his counsel also signed a factual resume setting forth the elements of the indictment and the stipulated facts establishing that Montoya had committed the offense. CR ECF No. 293.

On November 16, 2022, Montoya appeared for rearraignment. CR ECF Nos. 301, 452. He testified under oath at the hearing that: he had read, understood, and discussed with his attorney the charges against him; he had read, understood, discussed with his attorney, and signed the plea agreement and factual resume; there were no other promises or agreements that had not been included in the plea agreement; he understood that the maximum period of imprisonment under the agreement was twenty years; he understood that the district judge would decide his sentence; he understood that his attorney could give an opinion but could not promise what his sentence would be; he understood that he was waiving his right to appeal except in limited circumstances; he was guilty of the offense charged, and everything in the factual resume was true and correct. CR ECF No. 452. He further testified that he was fully satisfied with his attorney and the representation and advice that had been given to him in the case. *Id.* at 8.

The probation officer then prepared a presentence report ("PSR"), which reflected that Montoya's adjusted offense level was 38. CR ECF No. 350-1 ¶ 38. He received a two-level and a one-level reduction for acceptance of responsibility, for a total offense level of 35. *Id.* ¶¶ 40–42. Due to his plea agreement, Montoya's guideline range was 210–240 months of imprisonment. CR ECF No. 450 at 8.

On April 11, 2023, Montoya was sentenced to 210 months in prison. CR ECF No. 417. The Court noted on the record at sentencing the considerable impact of the plea agreement, without which Montoya would have faced a possible maximum sentence of 40 years of imprisonment on

2

Count One of the indictment, plus a maximum possible fine of $5 million. CR ECF No. 450 at 8. The Court explained the reasons for the sentence, noting that, even had the guideline range not been correctly calculated, the same sentence would have been imposed. *Id.* at 28. Montoya filed a direct appeal, which was dismissed by the Fifth Circuit as frivolous on March 18, 2024. CR ECF Nos. 440, 475.

### GROUNDS FOR THE MOTION

Montoya asserts the following grounds in support of his Motion, based on alleged ineffective assistance of counsel. He says that his counsel:

(1) promised that he would serve no more than eight years in prison if he pled guilty; and

(2) told him she would visit him in jail to discuss filing an appeal, but never did.

### STANDARD OF REVIEW

**A.      Section 2255**

After conviction and exhaustion or waiver of a defendant's right to appeal, courts are entitled to presume that the defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164–165 (1982); *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (same). A defendant can challenge his conviction or sentence after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the errors. *Shaid*, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors. "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Section 2255 is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal

3

and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). In other words, a writ of habeas corpus will not be allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Further, if issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v. United States*, 575 F.2d 515, 517–18 (5th Cir. 1978)).

Section 2255 motions do not automatically require a hearing. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B Jan. 1981); *see also* Rule 8 of the Rules Governing Section 2255 Proceedings. "When the files and records of a case make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." *Hughes*, 635 F.2d at 451. A prisoner is not entitled to an evidentiary hearing unless he or she "presents independent indicia of the likely merit of [her] allegations." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (internal marks omitted). The Court has reviewed the record and **FINDS** that an evidentiary hearing is not necessary because the record categorically refutes Montoya's claims, as set forth below.

**B.      Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, the movant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*; *see also United States*

4

*v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) ("Failure to meet either the deficient performance prong or the prejudice prong will defeat a claim for ineffective assistance of counsel.").

Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The likelihood of a different result "must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly deferential and the petitioner must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

ANALYSIS

## A.    Counsel's Alleged Promise of an Eight-Year Sentence

Montoya first alleges that his trial counsel was ineffective because he "was coerced by counsel's promises." ECF No. 2 at 4. Specifically, he claims his attorney told him that, if he pled guilty, his sentence would be no more than eight years. *Id.* However, Montoya's plea agreement represented that his guilty plea was "freely and voluntarily made," and he swore under oath that his plea was voluntary. *See* CR ECF Nos. 450 at 12, 294 at 5–6.

Specifically, the plea agreement signed by Montoya states:

> This plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court will impose.

5

*Id.* In addition, he swore in open court that no one threatened him or forced him to plead guilty; no one promised him what his sentence would be; and he acknowledged that the district judge had the sole discretion to determine his sentence. CR ECF 452 at 11–12, 16–18.

Montoya's solemn declarations in open court are entitled to a presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) ("Solemn declarations in open court carry a strong presumption of verity.") (internal quotation omitted). Likewise, his plea agreement and factual resume are entitled to the same presumption. *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985); *see also United States v. Lincks*, 82 F.4th 325 (5th Cir. 2023) (even if counsel gave mistaken sentencing information to movant, movant was not entitled to relief because he disclaimed reliance on counsel's statements in his plea agreement).

In support of his Motion, Montoya provides nothing more than a contradiction of his sworn testimony. "When a defendant's [Section 2255] allegations contradict his sworn testimony given at a plea hearing, we have required more than 'mere contradiction of his statements.'" *Reed*, 719 F.3d at 373 (quoting *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1985)); *see also United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (prisoner seeking habeas relief based on alleged promise must prove "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise."). Montoya provides no evidence of when and where the alleged promise was made, nor does he identify a witness to the promise. As stated above, Montoya's solemn declarations in open court establish his mindset at the time of the plea. *United States v. Valdez*, 973 F.3d 396, 405–06 (5th Cir. 2020). The record shows that Montoya's guilty plea was knowing and voluntary, and was made with sufficient awareness of the relevant circumstances and likely consequences.

6

*See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

Montoya's allegations in his Motion, unsupported by evidence, are insufficient to overcome his sworn statements in open court to show that his counsel "coerced" him into pleading guilty. *See Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Further, Montoya cannot show that he was prejudiced by his attorney's performance. To show prejudice under *Strickland*, Montoya must prove that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Court "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Montoya provides no evidence that he was prejudiced. In fact, he fails to allege that he would not have pled guilty but for his counsel's purported promise, and there is simply no reason to believe that he would have insisted on going to trial but for counsel's allegedly deficient performance. *Lockhart*, 474 U.S. at 56.

The record shows that Montoya never attempted to withdraw his guilty plea. The record additionally reflects that Montoya received a substantial benefit from pleading guilty. The plea agreement lowered his maximum possible punishment from 40 years to 20 years. CR ECF No. 450 at 8. As a result of the plea agreement, both the government and Montoya's counsel requested a sentence of 210 months — the bottom of the guideline range — and the court agreed that a

7

210-month sentence was proper. Montoya has failed to show that he was prejudiced by his counsel's performance as set forth in the Motion.

**B.      Counsel Failed to Meet With Montoya About a Direct Appeal**

Montoya next alleges that counsel promised to visit him in jail regarding filing an appeal, but did not. ECF No. 2 at 4. Assuming the truth of Montoya's allegation, he cannot show that he was prejudiced by counsel's conduct because he timely filed a *pro se* notice of appeal and was appointed new counsel to handle the appeal. *See* CR ECF Nos. 440, 445. Montoya cannot show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687.

For the reasons stated above, Petitioner's Motion to vacate is **DENIED**.

**SO ORDERED.**

October **15**, 2024.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

8